Woodard v. Clay

---

JOHN ELLIOTT WOODARD, ADMINISTRATOR OF PEGGY COLEEN WOODARD v. WALTER CLAY

No. 7418SC590

(Filed 2 October 1974)

1. **Automobiles § 57— wrongful death action — excessive speed at intersection**

    The trial court erred in directing verdict for defendant in a wrongful death action where the evidence would support a jury verdict finding defendant's speed at an intersection and his failure to reduce speed constituted negligence which was one of the proximate causes of the collision.

2. **Automobiles § 79— wrongful death action — entering intersection — no contributory negligence as a matter of law**

    The trial court erred in directing verdict for defendant in a wrongful death action where the evidence would support but not compel a finding that plaintiff's intestate was contributorily negligent in progressing across a highway in front of defendant's oncoming car.

APPEAL by plaintiff from *Lupton, Judge,* 18 March 1974 Special Session of Superior Court held in GUILFORD County.

This is a civil action to recover damages for wrongful death. Plaintiff's evidence showed the following:

Plaintiff's intestate was killed in a two-car collision which occurred at approximately 6:55 p.m. on 1 October 1972 within the intersection formed by the entrance of Company Mill Road into U. S. Highway 421 at a point a few miles south of Greensboro, N. C. At that point Highway 421 is a four-lane divided highway which runs generally north and south, with two 12-foot-wide paved traffic lanes running north and two 12-foot-wide paved lanes running south, the northbound lanes being separated from the southbound lanes by a 40-foot-wide median. Company Mill Road runs generally east and west and intersects into Highway 421 from the west. At the intersection there is a paved crossover across the median, but Company Mill Road otherwise dead ends into Highway 421 and does not continue eastward. Approaching the intersection from the north on Highway 421, there are, in addition to the two 12-foot-wide southbound traffic lanes, a 12-foot-wide paved exit lane to the right for traffic exiting to the right westward into Company Mill Road and a 12-foot-wide paved exit lane plus a 3-foot-wide emergency strip to the left for traffic turning left into the crossover over the median. Approximately 800 to 900 feet north of the intersection, Southeast School Road intersects into Highway 421 from the east.

On the date of the collision, Highway 421 was still partially under construction, but both the north and southbound lanes on the approximate 800 to 900 foot segment between the point at which Company Mill Road intersects into Highway 421 from the west and the point where Southeast School Road intersects into it from the east were open to the public in order to permit local traffic to move from points on one side of Highway 421 to points on the other. Highway 421 was not open to the public south of its intersection with Company Mill Road, and at the time of the collision there were barricades up across the southbound lanes on 421 just south of the intersection. These barricades consisted of steel "sawhorse" type frames about 3 feet tall with blinking amber lights on top. There were two barricades in the right-hand lane of the two southbound lanes and one on the other side of the southbound lane, with a small opening, about five feet wide, between. The posted speed limit on that

section of Highway 421 which was open to the public was 55 miles per hour.

Company Mill Road is a two-lane paved road which intersects into the west side of Highway 421 at approximately a right angle. At the intersection there were two stop signs facing traffic moving eastward on Company Mill Road. One of these was on a traffic island in the middle of the road at a point 8 to 10 feet west of the western edge of Highway 421. The other was on the shoulder at the southwestern corner of the intersection, about 6 feet west of the western edge of Highway 421. From a point about 20 feet west of the traffic island in the center of Company Mill Road, there is no obstruction and you can see north on Highway 421 all the way to the top of the hill on Southeast School Road.

The collision occurred during daylight. The weather was clear and the pavement was dry. Plaintiff's intestate, driving her husband's car with her three children as passengers, approached the intersection driving eastward on Company Mill Road. She stopped at the stop signs and then moved slowly forward into the intersection. At that moment defendant was approaching the intersection, driving his car south on Highway 421. When the Woodard car reached a point approximately at the center of the intersection of the eastbound lane on Company Mill Road with the outside southbound lane on Highway 421, it was struck on its left side by the front of defendant's car. Defendant's car came to rest, facing east and at a point approximately 30 feet south of the intersection, having severe damage to its front. The Woodard car came to rest, turned over on its top and at a point 20 to 25 feet beyond defendant's car, having severe damage to its left side. After it came to rest, there was a barricade underneath the Woodard car, with its amber light still flashing.

Starting almost in the center line of the southbound lanes of Highway 421 and leading up to the point of impact, there were 78 feet of skid marks left by defendant's car. Beyond the point of impact there were an additional 23 feet of skid marks left by defendant's vehicle.

Plaintiff's 13-year-old son, who was a passenger in the right front seat of the Woodard car, testified that he saw defendant's vehicle just prior to the collision, and it was "going pretty fast." Defendant told the investigating highway patrolman that he was running approximately 50 miles per hour.

At the close of plaintiff's evidence, the court allowed defendant's motion for a directed verdict under Rule 50. From this ruling, plaintiff appeals.

*Parker & Mazzoli by Gerald C. Parker for plaintiff appellant.*

*Frazier, Frazier, Mahler & Walker by Harold C. Mahler and Spencer W. White for defendant appellee.*

PARKER, Judge.

Defendant's motion for a directed verdict was made on two grounds, first, that the evidence failed to show actionable negligence on his part, and, second, that the evidence showed contributory negligence on the part of plaintiff's intestate as a matter of law. It cannot be sustained on either.

[1]  As to the first ground, there was evidence from which the jury could find that immediately south of the intersection the southbound lanes in which defendant was traveling were closed to the public, that he was put on notice of this fact by the presence of barricades, that though these were so positioned that they did not physically block his continued passage through the intersection, they nevertheless served as a warning of a special hazard which defendant failed to heed. Although there was no evidence that defendant exceeded the posted speed limit, he was under a duty to drive at a speed no greater than was "reasonable and prudent under the conditions then existing." G.S. 20-141(a). Defendant told the officer that he was running approximately 50 miles per hour, and the jury could find that this was greater than was reasonable and prudent under the circumstances. The jury could also find that his failure to reduce speed as he neared the intersection did not conform to the standard of due care of a reasonably prudent person. Thus, the evidence would support a jury verdict finding defendant's speed and his failure to reduce speed constituted negligence which was one of the proximate causes of the collision.

[2]  As to the second ground, there was evidence which would support, but which in our opinion would not compel, a verdict finding plaintiff's intestate guilty of contributory negligence. She brought her car to a stop as required by the stop signs facing her at the entrance of Company Mill Road into the west side of Highway 421. At that point she had a clear view up the highway to her left in the direction from which defendant

was approaching. In the exercise of due care she should have seen defendant's oncoming car. However, she could also observe the barricades in the southbound lanes of the highway to her right, and the jury could find that she knew that the highway to her right was not open to the public. The jury could also find that a prudent person, situated as she was, might in the exercise of due care have reasonably believed that defendant also saw the barricades and that in response to them he intended to drive only where he had a legal right to go. At what exact instant in time defendant's continued approach with speed unabated should have put Mrs. Woodard on notice that he did not intend to observe the barricades, and whether at that instant she still could have taken steps to protect herself and her children, were questions for the jury to decide. The jury might well find that her entrance into and her continued progress across the highway in front of defendant's oncoming car was negligence on her part. On this issue the burden was on the defendant, and we hold only that the evidence did not compel a finding in his favor as a matter of law.

The judgment allowing defendant's motion for a directed verdict is

Reversed.

Judges CAMPBELL and VAUGHN concur.